UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                           Criminal Action No. 1:06-CR-40-2

Aaron Ruby

## REPORT AND RECOMMENDATION
(Docs. 97 and 99)

Aaron Ruby, proceeding *pro se*, has filed a "Petition for Nunc Pro Tunc

Consideration" and a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28

U.S.C. § 2255. (Docs. 97 and 99.) Ruby was convicted following his plea of guilty to

one count of using and carrying a firearm in relation to a drug trafficking crime, in

violation of 18 U.S.C. § 924(c)(1)(A)(i). Pursuant to that statute, he was sentenced to the

mandatory minimum sixty-month term of imprisonment. As discussed below, although

Ruby casts his Motion as one that claims sentencing error and infringement of his Sixth

Amendment right to effective assistance of counsel, he ultimately seeks an order

compelling the Bureau of Prisons ("BOP") to grant him custodial credit for the following

two intervals: (1) the seventy-four days he spent in state court custody prior to

commencement of federal proceedings; and (2) the fifteen-and-one-half months he spent

in a private residential rehabilitative program known as "Teen Challenge" during the

pendency of the federal charges.

For the reasons set forth below, I recommend that Ruby's Motions be DENIED.

1

# I. Procedural History

The records before the Court reveal the following facts and events.[1]

## A. State Court Proceedings

Prior to initiation of the federal charges giving rise to this matter, Ruby had been charged in Chittenden County with assault and robbery in connection with a November 15, 2005 robbery of a marijuana supplier. On November 17, 2005, Ruby had been arrested by state authorities for that crime, and was released by the state court on bail November 21, 2005. On January 1, 2006, while on bail, Ruby was again arrested, this time by Rutland County authorities, and charged with new criminal conduct, consisting of domestic assault, unlawful mischief, and violation of the conditions of release which had been set in the November 15, 2005 robbery case. Thereafter, Ruby was incarcerated, and on March 14, 2006, he pled guilty in Rutland County to violating the release conditions which had been imposed in the Chittenden County case. The domestic assault and unlawful mischief charges were dismissed, and Ruby was sentenced to fifty-to-sixty days incarceration.

## B. Federal Court Proceedings

On April 13, 2006, an Indictment was filed in this District charging Ruby and co-Defendants Michael Manovill, Michael Charron, and Peter Charron with three felonies. (Doc. 1.) The Indictment alleged that on or about November 15, 2005, each Defendant conspired to possess with the intent to distribute marijuana (Count 1); conspired to use and carry a firearm during and in relation to a drug trafficking crime (Count 2); and used,

---

[1] Some of these facts are drawn from the federal Presentence Investigation Report.

carried, and brandished a firearm during and in relation to a drug trafficking crime (Count 3). The offense conduct involved the above-described November 15, 2005 assault and robbery with a weapon of a Burlington drug dealer of approximately two pounds of marijuana. The underlying state charge of assault and robbery was dismissed. On May 9, 2006, Ruby was arraigned on the Indictment and released on his personal recognizance with pretrial services supervision and other special conditions. (Docs. 7, 9.) One of the conditions of Ruby's release was that he was to complete the "Teen Challenge" program, in which he had been participating at the time of his arraignment. (Doc. 9, p. 2, ¶ x.)

On December 19, 2006, the United States Attorney filed an Information charging Ruby and co-Defendant Michael Manovill with knowingly and intentionally using and carrying a firearm on or about November 15, 2005, during and in relation to a drug trafficking crime, which amounted to a conspiracy to distribute marijuana, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2. (Doc. 53.) On December 20, 2006, in proceedings before United States District Judge J. Garvan Murtha, Ruby waived his right to proceed by means of an indictment in open court (Doc. 60), and pled guilty to the Information pursuant to a written Plea Agreement which required, as a condition thereof, that co-Defendant Manovill also enter a plea of guilty to the Information (Doc. 59, ¶ 4).[2]

As part of the Plea Agreement, the Government agreed: (1) not to prosecute Ruby for any other criminal offense relative to trafficking in narcotics or using firearms in furtherance of drug crimes on or around November 2005; (2) to move to dismiss the

---

[2] The Presentence Report indicates that, because Ruby pled guilty to violating 18 U.S.C. § 924(c)(1)(A)(i), he avoided the seven-year mandatory minimum term of imprisonment required by U.S.C. § 924(c)(1)(A)(ii), which applied to the offense charged in Count 3 of the Indictment due to brandishment of a firearm.

existing Indictment at the time of sentencing; (3) to recommend that Ruby be sentenced to the mandatory minimum term of imprisonment of five years; and (4) to recommend that Ruby receive the offense level reduction in the Sentencing Guidelines for manifestation of acceptance of responsibility under U.S.S.G. § 3E1.1, provided Ruby cooperated with the Probation Office during the presentence investigation and no new information came to the attention of the United States Attorney relative to the issue of acceptance of responsibility. (Doc. 59, ¶ 7.) At the December 20, 2006 Rule 11 hearing, Judge Murtha accepted Ruby's plea and ordered the preparation of a Presentence Investigation Report ("PSR"). A sentencing hearing was scheduled to occur on March 21, 2007, and Ruby was released pending sentencing on previously imposed conditions.

A PSR was submitted to the Court which concluded that Ruby faced a mandatory minimum term of imprisonment of sixty months as a result of his plea of guilty to the § 924(c)(1)(A)(i) offense. The PSR noted that Ruby had entered the Teen Challenge program on March 17, 2006, describing the program as a faith-based fifteen-to-sixteen-month intensive residential drug treatment program at a facility located in Johnson, Vermont. (PSR, p. 11, ¶ 36; p. 12, ¶ 45.) The PSR further indicated that Ruby's anticipated date of discharge from the program was June 29, 2007.

On March 21, 2007, Ruby appeared in federal court for sentencing. Prior to sentencing, Ruby's counsel, Attorney Douglas Kallen, filed a Sentencing Memorandum, wherein he requested that the Court "*recommend*" to the BOP that Ruby receive credit for the fifteen-and-one-half months he spent in the private Teen Challenge program. (Doc. 77, pp. 1, 3, 6 (emphasis in original).) Attorney Kallen thoroughly described the program

in the Sentencing Memorandum (*id.* at pp. 2-3), and submitted supporting exhibits.[3]  On

the date of the hearing, March 21, 2007, Judge Murtha granted Attorney Kallen's request,

thereby imposing the minimum sixty-month term of imprisonment and recommending

that Ruby "be given credit for the 15 ½ months he will have spent in the Teen Challenge

Residential Treatment Program."  (Doc. 83, p. 2.)  In an effort to allow Ruby to complete

the Teen Challenge program, Judge Murtha delayed the date by which Ruby was to

"surrender for service of sentence at the institution designated by the [BOP]" until July 7,

2007.  No appeal was taken.

## II.    The Instant Motion

On July 24, 2009, proceeding *pro se*, Ruby filed a document titled "Petition for

Nunc Pro Tunc Consideration."  (Doc. 97.)  Therein, Ruby sought a seventy-four day

reduction from his sixty-month sentence, arguing that the seventy-four days he had

served prior to initiation of the federal charges, arising from his arrest for violating

conditions of release on the initial assault and robbery, should have been credited to his

federal sentence because the conduct underlying both charges was closely related.[4]

On July 30, 2009, the Court issued an Order notifying Ruby that it was prepared to

re-characterize Ruby's Petition as a motion filed pursuant to 28 U.S.C. § 2255, and Ruby

was advised of the legal consequences of such re-characterization.  (Doc. 98.)  In

---

[3] Interestingly, although the Memorandum sought a recommendation to the BOP with respect to Ruby's participation in the Teen Challenge program, it made no mention of the apparent seventy-four days Ruby had spent in state custody due to his January 2006 arrest by state authorities.

[4] For some unknown reason, in this initial pleading, Ruby did not argue (as he argues now) that his federal sentence should also be reduced by the amount of time he spent in the Teen Challenge program.

response, on September 1, 2009, Ruby filed a "Motion Pursuant to Title 28 U.S.C. Section 2255," along with the standard form "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (Docs. 99, 99-1.) Therein, Ruby stated that he was electing to proceed under the provisions of § 2255. Additionally, he expanded his request for relief, seeking not only credit for the seventy-four days he spent in state custody, but also for the fifteen-and-one-half months he spent in the Teen Challenge program. (*Id.*)

Ruby concedes that he did not file his § 2255 Motion within one year of the date that his judgment of conviction became final, as required by 28 U.S.C. § 2255(f)(1). He argues, however, that this failure should be excused under the doctrine of "equitable tolling" because, despite his claimed exercise of due diligence, he did not uncover the relevant facts until May 22, 2009. (Doc. 99-1, p. 3, ¶ 1.) Ruby further argues that he received ineffective assistance of counsel when his counsel "failed to properly address under § 5G.1 pre-trial custody time." (Doc. 99, p. 4.) To that end, Ruby details the "great liberty restraints" that were placed on him while he participated in the Teen Challenge program, arguing that those restraints "far exceeded those of a normal prison life." (Doc. 99-1, pp. 11-14.) Confusingly, Ruby's Motion intermingles his ineffective assistance of counsel claim with his apparent claim that the sentencing court "committed an erroneous oversight by 'recommending 15 ½ months time credited,' instead of ORDERING time-credit." (*Id.* at p. 14.) On October 26, 2009, however, Ruby filed a Reply, wherein he presents a revised argument, now stating that he "Does Not Complain [that] The Sentencing Court Committed Legal Error." (Doc. 102, p. 3.) Instead, Ruby

appears to argue that the BOP erred in failing to abide by the sentencing court's "intent" to grant Ruby "credit toward the service of his sentence for the time spent in the highly restrictive [Teen Challenge program]." (*Id.*)

The Government opposes Ruby's Motion, arguing as follows: (1) the Motion is time-barred under § 2255's one-year limitations period; (2) the Motion is procedurally barred to the extent that it complains of the sentencing Court's failure to consider sentencing arguments not raised below; (3) the arguments raised in the Motion lack substantive merit, as the Court has no authority to declare that the time Ruby spent in the Teen Challenge program may count against his sentence, and neither U.S.S.G. § 5G1.1 or § 5G1.3 applies in this case; and (4) to the extent that the Motion seeks review of the BOP calculation of Ruby's sentence, it was brought under the wrong statute and in the wrong district. For the reasons stated below, I find that each of the Government's points is meritorious, while Ruby's positions are unsupported by fact or law.

## III.    Discussion

### A.    Equitable Tolling of Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the timeliness of Ruby's claims. Pursuant to 28 U.S.C. § 2255(f), a one-year period of limitation applies to federal motions to vacate, set aside, or correct a sentence. *See Coleman v. United States*, 329 F.3d 77, 80 (2d Cir. 2003); *Khan v. United States*, 414 F. Supp. 2d 210, 213 (E.D.N.Y. 2006). The limitations period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the

Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim(s) presented could have been discovered through the exercise of due diligence. *Id.* (citing 28 U.S.C. § 2255(f)(1)-(4)). An unappealed federal criminal judgment (such as Ruby's) becomes final for purposes of calculating the time limit for filing a motion to vacate, set aside, or correct when the time for filing a direct appeal expires. *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005).

Ruby did not appeal his federal judgment, and more than a year passed between the date on which his judgment of conviction became final (April 4, 2007) and the date he filed the instant Motion (July 24, 2009). (Doc. 99-1, p. 3.) He contends, however, that: (a) the limitations period did not begin running until May 22, 2009, the date on which he completed the BOP administrative remedy process and thus discovered the facts supporting his § 2255 claim;[5] and (b) the Court should consider his Motion timely under equitable tolling principles. (*Id.* at pp. 3-6.)

The doctrine of equitable tolling applies to 28 U.S.C.A. § 2255's one-year limitations period. *Villanueva v. United States*, 346 F.3d 55, 62 (2d Cir. 2003). But the doctrine may be applied "only in 'rare and exceptional circumstances,' where [the court]

_____

[5] Although Ruby argues that the limitations period did not begin running until May 2009, he states that he was notified by the BOP "*on or about May 1, 2008*" that he would not receive credit for the time he spent in the Teen Challenge program or in state custody, which notification would seem sufficient to apprise Ruby of the facts supporting his claim. (Doc. 99-1, p. 3.)

[finds] that 'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [seeks] to toll.'" *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)); *see Villanueva*, 346 F.3d at 62 (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)). The term "extraordinary" does not refer to the uniqueness of the petitioner's circumstances, "but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008).

In order to show that extraordinary circumstances prevented the petitioner from filing his petition on time, he must "'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'" *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). Examples of instances where courts have tolled the limitations period include: "egregious attorney misconduct, the intentional confiscation of legal papers by prison authorities, serious physical or mental illness which prevents the petitioner from filing, [and] or [w]here a petitioner, through no fault of his own, first learns of the outcome of a final appeal after the time for seeking habeas has expired." *Garcia v. Portuondo*, 334 F. Supp. 2d 446, 458-59 (S.D.N.Y. 2004) (footnotes and quotation marks omitted); *Bolarinwa v. Williams*, No. 08-0832-pr, 2010 WL 308963, at *5 (2d Cir. Jan. 28, 2010).

The burden is on the petitioner to show that the equitable tolling doctrine applies, *Garcia v. Portuondo*, 334 F. Supp. 2d at 459, and a petitioner's *pro se* status does not alone warrant equitable tolling, *Smith v. McGinnis*, 208 F.3d at 18. The court's determination of whether to equitably toll the limitations period is made on a case-by-case basis, and equitable tolling should be granted sparingly. *Bolarinwa v. Williams*, 2010 WL 308963, at *5; *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006). The Sixth Circuit has set forth the following factors to determine whether equitable tolling is appropriate: "(1) the defendant's lack of notice of the filing requirement, (2) the defendant's lack of constructive knowledge of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice to the respondent, and (5) the defendant's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Solomon v. United States*, 467 F.3d at 933.

As noted above, Ruby concedes that his conviction became final on April 4, 2007, ten days after his sentencing on March 21, 2007. (Doc. 99-1, p. 5.) Yet he did not file the instant Motion until July 24, 2009, over two years later. Ruby's principal argument is that the one-year limitations period should be equitably tolled because he "could not possibly have discovered that he would not receive credit towards his sentence for either the 15 ½ months spent in the Teen Challenge Program or the 74 days on the related offense until beginning his period of imprisonment" in July 2007. (*Id.*) Moreover, he claims that he exercised due diligence "in resolving his issues" by sending letters to the Court on two separate occasions. (*Id.*)

These arguments are unpersuasive. First, the record reveals that Judge Murtha did

not *order* – but rather, merely *recommended* – that Ruby receive credit for the time spent in the Teen Challenge program, and Ruby was aware of this fact. Therefore, Ruby's alleged reliance on a belief that he would receive credit for such time is unjustified. Moreover, even if the limitations period did not begin until the date Ruby was committed to the BOP (July 2007), or until the date the BOP allegedly notified Ruby that he would not receive credit for the time spent in the Teen Challenge program or in state custody (May 2008), the limitations period still expired in advance of the filing of the instant Motion in July 2009.

With respect to the letters Ruby sent to Judge Murtha in May and October 2008, respectively, the Court first notes that it is unaware of any authority for the proposition that the submission of letters to the Court tolls the limitations period for a federal habeas petition. More importantly, Judge Murtha replied to Ruby's letters, advising Ruby in May 2008 that "the decision rests with the Bureau of Prisons whether to credit [the relevant] period[s] of time to your sentence," and in October 2008 that "the Court's recommendation to the Bureau of Prisons that you receive credit for the time spent in the Teen Challenge . . . program is simply a recommendation[;] [t]he final decision rests with the Bureau of Prisons and the Court cannot adjust your sentence." (Doc. 99-4, pp. 14-15.) Thus, it is clear that Ruby was on notice at least as early as May 2008 (but more likely sooner) that the Court had merely recommended that the BOP credit Ruby's sentence for time already served, and that the BOP could either accept or reject that recommendation. Yet Ruby waited over a year from that date to file the instant Motion.

Ruby argues in his Reply that he was unable to file his Motion sooner because he

was required to follow an administrative remedy process before applying to the Court, and that administrative process did not begin until he received a sentence computation sheet. (Doc. 102, p. 3.) Notably, however, he does not state or present evidence demonstrating when he received that computation sheet, instead asserting stating that they are "generally provided to prisoners several months after entry into the BOP." (*Id.*) Moreover, Ruby was committed on July 17, 2007, and he admits that he "did not begin to show diligence in resolving his issues until May 6, 2008." (Doc 99-1, p. 5.) "As a general matter, a litigant seeking equitable tolling must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Bolarinwa v. Williams*, 2010 WL 308963, at *4 (quotation marks and citation omitted). Ruby has simply provided no evidence or argument demonstrating that he has diligently pursued his rights, and that any extraordinary circumstance, including any aspect of the administrative procedure process, interfered with his ability to timely file the instant Motion or excused him from timely pursuing judicial relief.

In sum, Ruby has failed to set forth any rare and extraordinary circumstances which prevented him from filing his Motion within one year of any reasonable starting point. Thus, equitable tolling does not apply, and Ruby's claim is barred by the one-year limitations period applicable to § 2255 petitions. Moreover, as discussed below, Ruby's claims lack merit, and thus they should be rejected even if they were timely filed.

**B.**     **Sentencing Court's "Recommendation" to the BOP**

Ruby claims that Judge Murtha erred in failing to consider U.S.S.G. § 5G1.3 of

the Federal Sentencing Guidelines when imposing a sentence.[6]  Specifically, Ruby contends that the Judge should have *ordered* the BOP to credit Ruby with time served in the Teen Challenge program, rather than merely *recommending* such credit.  Moreover, Ruby asserts that the Judge should have credited him for the time served on the Rutland County violation-of-release-conditions charge.  Both points are unsupported, on procedural and substantive grounds.[7]

First, Ruby raised these arguments neither at sentencing nor on appeal, and thus, he is barred from pursuing them now in a § 2255 petition.  Section 2255 is intended to remedy fundamental defects in a criminal prosecution.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  A court may grant relief under this section only for constitutional errors, lack of jurisdiction, or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice.  *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996).  Section 2255 "may not be used as a substitute for a direct appeal."  *Marone v. United States*, 10 F.3d 65, 77 (2d Cir. 1993) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)); *see United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998).  "Absent exceptional circumstances, a non-constitutional and non- jurisdictional claim may not be raised collaterally under section 2255 where it could have been, but was

---

[6] Although Ruby referred to U.S.S.G. § 5G1.*1* on page six of his form Motion, he discussed application of § 5G1.*3* in more detail in the body of his Motion and in his Reply.  (Doc. 99, p. 15; Doc. 102, p. 5.)  It is presumed that Ruby intended to refer to § 5G1.*3* rather than § 5G1.*1*, as only the former section has any arguable relevance to Ruby's claim.

[7] As discussed above, it appears that Ruby may have abandoned his claim that Judge Murtha committed legal error.  (*See* Doc. 102, p. 3, where Ruby states that he "Does Not Complain [that] The Sentencing Court Committed Legal Error.")  In the event he has not abandoned such claim, however, it is analyzed herein, and found to be unmeritorious.

not, raised on direct appeal." *Hardy v. United States*, 878 F.2d 94, 98 (2d Cir. 1989) (citing *Brennan v. United States*, 867 F.2d 111 (2d Cir. 1989)).

In this case, Ruby raises his sentencing-related arguments for the first time in the instant Motion. Ruby's Sentencing Memorandum reveals that (1) Ruby did not ask the sentencing court to credit him for his state incarceration, instead addressing only his time spent in the Teen Challenge program at that time; and (2) Ruby requested only that the sentencing court *recommend* – not order – that the BOP credit him for his time spent in the Teen Challenge program. (Doc. 77, pp. 1, 3, 6.) Ruby fails to present exceptional circumstances which prevented him from raising the arguments made in the instant Motion at sentencing or on appeal, and thus, he may not raise them on collateral attack under § 2255. *See DeJesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1999); *United States v. Pope*, No. 2:03 CR 92, 2007 WL 1839636, at *3 (D. Vt. June 25, 2007).

Ruby's claim that Judge Murtha erred in failing to consider § 5G1.3 when imposing a sentence also fails on substantive grounds. First, the Judge did not err in recommending (as opposed to ordering) that the BOP credit Ruby's time in the Teen Challenge program. Not only did Ruby request no more than a "recommendation" from the Court, but the Court was authorized to do no more. The Supreme Court has held that time to be credited is calculated by the Attorney General through the BOP after the defendant has begun to serve his or her sentence, and not by the sentencing court at the time the sentence is imposed. *United States v. Wilson*, 503 U.S. 329, 331-32 (1992); *see United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998) ("The Bureau of Prisons, and not the courts, determines . . . whether the defendant should receive credit

for any time spent in custody."); *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998). Ruby's attorney properly conceded this point in his Sentencing Memorandum, stating: "This Court can not *order* the Bureau of Prisons to give the Defendant credit towards time spent in residential treatment against a prison sentence." (Doc. 77, p. 3, ¶ 1 (emphasis in original) (citing *Reno v. Koray*, 515 U.S. 50 (1995).)

Furthermore, § 5G1.3 does not apply here because, as the Second Circuit explained in *Labeille-Soto*, 163 F.3d at 98-99, that statute does not apply if the underlying sentence (here, the seventy-four-day state sentence) has been completed prior to sentencing on the instant offense. The court explained:

> [T]he [Sentencing Reform Act of 1984] provides that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." *Id.* § 3584(a). *From this section's use of the modifier "undischarged," it may reasonably be inferred that Congress did not intend to allow the court to make a new prison term run concurrently with a prison term that has already been completed.* Reflecting this inference, Guidelines § 5G1.3 is entitled "Imposition of a Sentence on a Defendant Subject to an *Undischarged* Term of Imprisonment" (emphasis added); it describes (a) the circumstances in which the new sentence on such a defendant must be consecutive and (b) the circumstances in which the new sentence must be concurrent; and it gives the court discretion in instances not covered by (a) or (b), stating that
>
> > [i]n any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense,
>
> Guidelines § 5G1.3(c) Policy Statement. *See also* Sentencing Guidelines § 5G1.3(c) Policy Statement (1994) ("In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable punishment for the instant offense."). *In each set of circumstances, however, the predicate is that the defendant's prior prison*

> term remains "undischarged." There is no provision, either in the Act or in the Guidelines, stating that the court may order that the sentence it imposes be deemed to have been served concurrently with a prior prison term that has been fully discharged. If the defendant has completed his state prison term before the federal sentence is imposed, § 5G1.3 does not apply, and his federal prison term cannot be imposed concurrently.

*Id.* (emphasis added) (citation omitted). Ruby asserts that his sentence for violating conditions of release was seventy-four days, and that he served that time. It appears that Ruby had served that sentence by March 2007, when his federal sentence was imposed. Thus, the state sentence was fully discharged on the date of sentencing, and § 5G1.3 does not apply.

Additionally, subsection (b) of § 5G1.3, in particular, does not apply because that subsection governs only those cases where the criminal conduct which forms the basis of the underlying term of imprisonment also was "the basis for an increase in the offense level for the instant offense." U.S.S.G. § 5G1.3(b); *see United States v. Arroyo*, 324 F. Supp. 2d 472, 474 (S.D.N.Y. 2004) (finding that U.S.S.G. § 5G1.3(b) did not apply, given that "[t]he record is clear that [the petitioner's] state offense was not considered in the determination of his offense level for federal sentencing purposes"). Here, the conduct forming the basis of Ruby's state conviction for violation of release conditions was not the basis for any increase in the offense level for Ruby's federal conviction. In fact, there was no increase in offense level, as Ruby was sentenced to the statutorily-mandated minimum sixty-month term of imprisonment required by 18 U.S.C. § 924(c).

In response to the Government's reliance on *Wilson* and *Labeille-Soto*, cited above, Ruby cites *United States v. Rivers*, 329 F.3d 119 (2d Cir. 2003) in his Reply. In

*Rivers*, the Second Circuit held that a sentencing court could "adjust" a statute-based

mandatory minimum sentence to reflect time he had previously served on an

undischarged state sentence. Ruby's reliance on *Rivers* is unpersuasive, however, with

respect to both his time served on the state charge and time spent in the Teen Challenge

program. First, with respect to the seventy-four-day sentence arising from Ruby's state

charge in Rutland County for his violation of release conditions, as discussed above, that

sentence had concluded by the time the federal sentence was imposed; and the law clearly

provides that a federal court cannot give credit for a state sentence which has been fully

served, i.e., discharged. *See, e.g., United States v. Fermin*, 252 F.3d 102, 109 (2d Cir.

2001). Despite Ruby's arguments to the contrary, *Rivers* does not hold otherwise. *See

Rivers*, 329 F.3d at 123 ("[W]e find that the district court correctly adjusted Rivers'

sentence to reflect the time served *in the undischarged state sentence*.") (emphasis

added).

Second, Ruby's participation in the Teen Challenge program, however restrictive,

was not a "sentence" and did not constitute "time served," and thus *Rivers* does not

apply. *See, e.g., Reno v. Koray*, 515 U.S. 50, 63-65 (1995) (recognizing that time spent

in community confinement *subject to BOP custody* entitles a prisoner to sentencing

credit, while community confinement in a restrictive treatment center *while on pretrial

release* does not, because "[u]nlike defendants 'released' on bail, defendants who are

'detained' or 'sentenced' always remain subject to the control of the Bureau"); *Davis v.

Killian*, No. 07 Civ. 6584(SAS), 2008 WL 627510, at *1 (S.D.N.Y. Mar. 7, 2008) ("Any

time spent on bail may not be credited against the [defendant's] sentence, even if during

those periods the defendant was ordered to a facility under 'highly restrictive conditions' and 'jail-type confinement.'"). Ruby has cited no law, and the Court is unaware of any, which likens time spent in a restrictive private residential center to "time served" under the BOP, for purposes of crediting a petitioner's term of incarceration.

### C. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim is not subject to the failure to appeal procedural bar discussed above, and such a claim may generally be raised for the first time on collateral review. *See, Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002) ("claims of ineffective assistance of counsel generally are not procedurally barred"); *Billy-Eko v. United States*, 8 F.3d 111, 114 (2d Cir. 1993) (ineffective assistance claims are appropriately brought in § 2255 petitions even if overlooked on direct appeal because resolution of such claims often requires consideration of matters outside the record on direct appeal), *superseded by statute on other grounds as stated in Triestman v. United States*, 124 F.3d 361, 369, n. 8 (2d Cir. 1997). However, Ruby's ineffective assistance claim is also barred by the AEDPA's statute of limitations. Furthermore, the claim fails on its merits.

The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance that the trial was rendered unfair and the verdict suspect. *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). In order to prevail on an ineffective assistance claim, a petitioner must establish that (1) he was deprived of reasonably competent representation; and (2) counsel's deficient performance prejudiced his defense. *Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000) (citing

*Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). With respect to the petitioner's receipt of competent representation, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because "'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689); *see Lauria v. United States*, Nos. 396cr185 (PCD), 301cv893(PCD), 301cv1894(PCD), 2006 WL 3704282, at *5 (D. Conn. Dec. 13, 2006). Deficient representation may be shown by establishing that the attorney's conduct fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

With respect to the prejudice caused by counsel's deficient performance, it may be established by showing that a "reasonable probability" exists that, but for counsel's deficient representation, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994). "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham*, 313 F.3d at 730 (citing *Strickland*, 466 U.S. at 694).

Ruby fails both prongs of the *Strickland* test. First, Ruby has failed to show that he was deprived of reasonably competent representation. As discussed in detail above, Attorney Kallen's failure to request a credit for the seventy-four days Ruby had served on

his state conviction for violation of release conditions was proper, given that: (a) § 5G1.3 applies only in cases where the underlying sentence was not completed prior to sentencing on the instant offense; and (b) Ruby's state sentence was completed prior to sentencing on the federal offense.  Attorney Kallen's request that the court recommend (as opposed to order) the BOP to credit Ruby for his time spent in the Teen Challenge program was also proper, given that time to be credited on a sentence is calculated by the BOP after the defendant has begun to serve his or her sentence, and not by the sentencing court at the time the sentence is imposed.

For the same reasons, even assuming Attorney Kallen's representation was deficient, Ruby has not demonstrated prejudice, i.e., he has failed to show a reasonable probability that, absent counsel's deficient representation, the result of the proceeding would have been different.  In fact, because it is for the BOP, and not the sentencing court, to calculate a prisoner's sentence, any request by Ruby's attorney that the sentencing court *order* the BOP to credit Ruby's time would have been legally improper.  Moreover, under 18 U.S.C. § 924(c)(1)(A)(i), the Court had no authority to sentence Ruby to a term of less than five years.  (*See also* Ruby's Plea Agreement, Doc. 59, ¶ 2.)

### D.    Venue for Challenging BOP's Calculation of Sentence

The essence of Ruby's claim is that the BOP has failed to follow the recommendation of Judge Murtha and grant custodial credit for Ruby's participation in the Teen Challenge program.  Therefore, Ruby challenges the BOP's calculation of his sentence.  A challenge to the computation of a prisoner's sentence is a challenge to the execution of such sentence, not the legality of its imposition, and a challenge to the

*execution* of a sentence is properly filed under 28 U.S.C. § 2241, not § 2255. *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). The Second Circuit explained: "A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, *computation of a prisoner's sentence by prison officials*, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Id.* (citing *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997)) (emphasis added). In contrast to a motion brought under § 2255, the proper venue for a motion brought under § 2241 is the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *Shehadeh v. United States*, No. 5:05-CV-1309(FJS), 2008 WL 630473, at *2 (N.D.N.Y. Mar. 5, 2008); *Clinkscale v. United States*, 367 F. Supp. 2d 1150, 1155 (N.D. Ohio 2005) ("Any claim challenging sentencing credit determinations must be brought pursuant to 28 U.S.C. § 2241 in the district court having jurisdiction over the petitioner's custodian."). Ruby is currently incarcerated in White Deer, Pennsylvania, and thus the proper venue for his judicial challenge to the BOP's calculation of his sentence under § 2241 is the Middle District of Pennsylvania, his "district of confinement."

### E. Request for Appointment of Counsel and Evidentiary Hearing

Finally, Ruby has requested that the Court schedule an evidentiary hearing and appoint counsel to assist him in pursuing the instant Motion. (Doc. 99, p. 13; Doc. 102, p. 7.) These requests should be denied. Evidentiary hearings are not required on habeas corpus petitions when, as here, the record shows that the petitioner is not entitled to relief.

*Hayden v. United States*, 814 F.2d 888, 892 (2d Cir. 1987) (citing 28 U.S.C. § 2255). The Second Circuit has held that the standard to be used in determining the propriety of an evidentiary hearing on a habeas petition is whether, "if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." *Id.* (quotation and citations omitted). Moreover, before an evidentiary hearing is ordered, "[t]he petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Id.* (quotation and citations omitted). Ruby has set forth no such facts, and the record demonstrates that he is not entitled to relief.

Appointment of counsel for an indigent litigant under § 2255 is allowed when "the interests of justice so require." 18 U.S.C. § 3006A(2)(B). In determining whether "the interests of justice so require," the court must first examine whether the petitioner has presented a meritorious claim. *See Reese v. Fulcomer*, 946 F.2d 247, 263-64 (3d Cir. 1991), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d). Next, the court must determine whether the appointment of counsel will benefit the petitioner and the court by examining the legal complexity of the case and the petitioner's ability to present his claims and investigate facts. *Id.* When the issues involved in the case are "straightforward and capable of resolution on the record," or when the petitioner has "a good understanding of the issues and the ability to present forcefully and coherently his contentions," counsel need not be appointed. *Id.* at 264 (quotation marks and citations omitted).

In this case, as discussed above, Ruby has not presented a meritorious claim, and thus the interests of justice do not require appointment of counsel. Moreover, the issues

presented in Ruby's Motion are straightforward and capable of resolution on the record; and Ruby has proven his ability to proceed with this matter *pro se* by filing several competent briefs without formal assistance. Given these facts, there is no need to conduct an evidentiary hearing or appoint counsel, as neither device would change the outcome of this matter.

## CONCLUSION

Based on the foregoing, I recommend that Ruby's Petition for Nunc Pro Tunc Consideration (Doc. 97) and his Motion to Vacate, Set Aside, or Correct Sentence (Doc. 99) be DENIED, and that the matter be DISMISSED without a hearing and without appointment of counsel.

Dated at Burlington, in the District of Vermont, this 2nd day of February, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

The parties are advised that any party may object to this Report and Recommendation ***within fourteen (14) days*** after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all other parties, a written objection which shall specifically identify the portion(s) of the proposed findings, recommendations, or report to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule waives the right to further appellate review of the District Court's order entered pursuant to this Report and Recommendation. *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a), and 6(d).